UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:04-cv-334/ 1:03-cr-73 |
| | ) | *Edgar/Carter* |
| LAVONDA GOFORTH | ) | |

## <u>MEMORANDUM</u>

### I.     Introduction

Lavonda Goforth ("Goforth"), a federal prisoner, brings this *pro se* motion for post-conviction relief pursuant to 28 U.S.C. § 2255.   For the reasons which follow, the Court has determined a hearing is not necessary and concludes that the § 2255 motion lacks merit and will be **DENIED**.  Goforth is not entitled to relief under § 2255.

### II.     Procedural Background

On April 8, 2003, a thirteen-count superseding indictment was filed which charged Goforth with four counts of various drug trafficking offenses.   Goforth was charged in Count One with conspiracy to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A).   Count Eight of the indictment charged that Goforth, Chris Goforth, and Bruce Mantooth, aided and abetted by each other, did knowingly, intentionally, and without authority, possess with the intent to distribute methamphetamine, a Schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and Title 28 U.S.C. § 2.  Goforth was charged in Count Nine, along with the above-named co-defendants, for knowingly, intentionally and without authority distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 28 U.S.C. § 2.   Count Ten of the indictment charged Goforth and her above-named co-

defendants with possession of a firearm in furtherance of the drug trafficking crimes identified in Count One, Count Eight, and Count Nine of the superseding indictment, in violation of 18 U.S.C. § 924(c). Goforth pleaded guilty to Count One and Count Ten of the indictment. The Presentence Investigation Report ("PSR") reflects Goforth pleaded guilty on June 19, 2003, without the benefit of a plea agreement.

On October 27, 2003, Goforth was sentenced to 180 months incarceration, 120 months on Count One and a term of 60 months on Count Ten to be served consecutively to Count One. Goforth did not take a direct appeal from the judgment of conviction. This § 2255 motion was timely filed on or about October 24, 2004,[1] alleging ineffective assistance of counsel and a government misconduct claim.

## III.    Standard of Review

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

---

[1]    In calculating the filing date, the Court has applied the "mailbox rule" and deemed the § 2255 motion to have been passed to the prison officials for mailing on October 24, 2004—the same date the Goforth signed her § 2255 motion. *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997), citing *Houston v. Lack*, 487 U.S. 266, 270-71 (1988)(deeming an appeal to be filed on the date it was  passed to prison officials for mailing); see also Fed. R. App. P. 4(c).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted)(§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); see also *United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994)(applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

Further, a § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant v. United States*, 72 F.3d at 506; *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Moreover, Goforth cannot use a § 2255 motion to litigate the issues that should have

been presented and decided on direct appeal unless cause is shown for the tardy challenge and "actual prejudice" resulting from the error is demonstrated, *United States v. Frady*, 456 U.S. 152, 167-68 (1982); or that the movant is actually innocent of the crime. *See Bousley v. United States*, 523 U.S. at 622. Issues which are presented and considered on direct appeal cannot be litigated again in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir.), *cert. denied*, 528 U.S. 933 (1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996).

## IV.    Facts

The following pertinent facts are taken from the PSR prepared by the United States Probation Office:

17.    In early 2003, Bradley County, Tennessee Drug Task (DTF) officers and agents with the Drug Enforcement Administration (DEA) began an investigation of methamphetamine trafficking into the area by Patricia and Patrick McCurry. DTF had received information that Patricia McCurry was a major distributor of methamphetamine in Bradley County. Patricia McCurry used her husband (Patrick McCurry) to make deliveries on her behalf. She also used customer Charles "Bobby" Dove to perform work for her, such as deliveries. During the course of the investigation, as participants were arrested and cooperated, several other individuals were found to be involved in the distribution of methamphetamine, including sources Mike Davis and William "Bill" Curtis, and David Conley. Mike Davis (the main supplier to this group at one time) utilized Scott Curtis for assistance. Davis's main supplier was Lavonda Goforth, who used her husband (Chris) to make deliveries for her.

18.    At the onset of the investigation, DTF developed a Confidential Informant (CI) who then made two undercover controlled buys of methamphetamine from Patricia McCurry. (About the same time another CI made an undercover buy of methamphetamine from Bobby Dove.) Following the two undercover buys (amounts unknown), DEA agents served a federal search warrant at the home of Patricia and Patrick McCurry, located at Cook Road, on March 1, 2003. Present when agents entered the home were: Patricia McCurry, Patrick McCurry, Bill Curtis, and Scott Curtis. Recovered during the search were: 400 grams of methamphetamine, $1,000 in cash, a loaded Winchester shotgun, a Marlin .22 caliber rifle, police scanner, digital scales, and drug paraphernalia. The weapons were located in the same room as the drugs. The vehicle driven by Bill Curtis was also searched at the McCurry's

4

home. Inside the 1996 Pathfinder, officers located a loaded Inter-Arms .380 caliber semi-automatic handgun and a quantity of plastic bags. Patricia and Patrick McCurry both made voluntary statements at the time of their arrests.

19.     On March 1, 2003, based upon the undercover drug buy made by a Confidential Informant, a state search warrant was executed at the home of Bobby Dove. Located in the residence was an eightball of methamphetamine and a small quantity of marijuana. Dove was arrested and made a voluntary statement.

20.     On March 1, 2003, the home of Bill Curtis in Bradley County, Tennessee was searched after officers obtained a state search warrant. Located at the residence was equipment and chemicals used to manufacture methamphetamine, including: muriatic acid, glassware, tubing, red phosphorus, Coleman fuel, coffee filters, and other equipment. Agents found written instructions on how to make methamphetamine. A small quantity of marijuana was also located in the residence.

21.     On March 21, 2003, officers served a state search warrant at the home of Mike Davis in Bradley County, Tennessee. The search warrant was based upon CI information obtained during the investigation. At Davis's home, officers found a quarter ounce of methamphetamine. Davis made a voluntary statement when arrested. He told officers that he dealt in large quantities of methamphetamine, and that his source (Lavonda Goforth) was in North Georgia. He agreed to cooperate and made a recorded phone call to Lavonda Goforth. During the call, Davis asked to purchase a pound of methamphetamine. Lavonda Goforth stated that she could not get her hands on that much because her "boys were on spring break," but she would send her husband (Chris) with eight ounces. Chris Goforth later arrived at Davis's house. He first entered the house and spoke with Davis. He then returned to the vehicle for the drugs. Seated in the car was Bruce Mantooth, who did not exit the vehicle. Chris Goforth returned to the house where he delivered about eight ounces to Davis and he was arrested. On Chris Goforth, officers found about 1 ½ ounces of methamphetamine, $1,200 in cash, and a loaded .22 caliber North American Arms revolver. A search of Goforth's vehicle, produced 29 rounds of rifle ammunition, and a CCI brand .22 caliber round on the dashboard. There was also white powder from the methamphetamine bag (which had a hole in it) on the passenger's seat, where Bruce Mantooth had been seated. (Mantooth is charged in the Indictment; however, the government is dismissing charges against him, as the evidence does not show that he was involved in the drug distribution conspiracy.) Lavonda Goforth later turned herself in. Their home was not searched.
. . .

23.     Lavonda Goforth did not make any voluntary statements and also provided a poor proffer session with the government. The drug amount that should be attributed to **Ms. Goforth** comes from Harold Michael Davis's admission to law enforcement officers. He admitted to purchasing one-half pound quantities, possibly

up to 5 pounds total (**2,268 grams** of methamphetamine), from Lavonda Goforth. This information easily supports the defendant's guilty plea of distributing at least 500 grams of methamphetamine. Ms. Goforth will receive a role adjustment in this case, as she used her husband (Chris Goforth) as a delivery person for the methamphetamine. Ms. Goforth also pled guilty to 18 U.S.C. § 924(c). Due to this, there will be no specific offense characteristic for any of the firearms.

PSR at 5-7.

The defendant was sentenced on October 27, 2003. At the October 27, 2003 sentencing hearing, the Court found that defendant's criminal history category was I. Goforth's total offense level was 31. Goforth's offense level of 31, combined with her criminal history category of I, resulted in a sentencing range of 180 to 195 months imprisonment. The defendant was sentenced to 180 months of imprisonment, to be followed by five (5) years of supervised release.

## V.      Analysis

Goforth's § 2255 motion to vacate contains three claims. First, she raises a claim of ineffective assistance of counsel against Attorney James F. Logan. Mr. Logan briefly represented Goforth. Mr. Logan arranged for Goforth to meet with federal agents and Assistant United States Attorney Perry Piper.[2] However, Mr. Logan failed to appear at the meeting, and instead, informed Goforth he could no longer represent her. Goforth subsequently hired Attorney Philip Duval. Goforth alleges both Mr. Duval and Mr. Logan were ineffective. In addition, Goforth also raises a government misconduct claim.

### A.      Ineffective Assistance of Counsel

Goforth submits several sub-claims under her ineffective assistance of counsel claim as to

---

[2]      Attached to Goforth's § 2255 motion is a letter from the Assistant United States Attorney to Mr. James F. Logan referring to Goforth as Attorney Logan's client and clarifying the ground rules for the interview with Goforth.

Attorney Logan and Attorney Duval. To establish ineffective assistance of counsel, Goforth must demonstrate a deficiency by counsel which rendered counsel's assistance objectively unreasonable and that the deficient performance resulted in prejudice to her. The Supreme Court, in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires a defendant to demonstrate two essential elements: (1) counsel's performance was deficient, i.e., below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88; *see also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987). In plea proceedings, the movant must show but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992).

### 1. Attorney James F. Logan

In her § 2255 motion Goforth identifies several alleged instances of ineffective assistance of counsel on Attorney James F. Logan's part. Goforth makes the following claims against Attorney James Logan:

> Lavonda Goforth was advised that the government would probably want to talk to her [after her husband was arrested for distributing methamphetamine]. Petitioner was scared and unsure of what would happen. She retained an attorney, James F. Logan, initially to discuss the situation of her husband, Chris Goforth. Mr. Logan

did not disclose at the time that he had already been retained by another defendant in the case and had a conflict of interest. Instead, Mr. Logan spoke with AUSA Perry Piper and then told Petitioner that she was going to be indicted. He arranged for her to meet with the agents and Mr. Piper.

Her interview was scheduled for March 27, 2003. It appears that this was before the superseding indictment. Petitioner agreed to the interview solely on the advise [sic] of Mr. Logan and with the assurance that he would be at the meeting to represent her. He stated that Mr. Piper said if she cooperated with the interview that if she was charged the charges would be kept at the state level. Mr. Logan was to have met her at the office where this was to be held.

Instead, when Petitioner arrived she was advised by Mr. Logan by telephone that he had already been retained by another defendant in the indictment and because of the conflict could not represent her. He told her, however, that it was best for her to proceed with the interview with the federal agents without re-scheduling to have an attorney present. He never advised her that it might be in her best interests to seek other legal counsel before agreeing to proceed or to be with her during the session. In fact, his advise [sic] was exactly the opposite. At that time, Petitioner received the attached letter (Exhibit A) as a condition of proceeding.

(Doc. 1).

Goforth claims Mr. Logan accepted a retainer and purported to be acting on her behalf when he knew that,[3] in fact, he already represented her co-defendant or, while representing her agreed to represent her co-defendant.[4] Nevertheless, Goforth has failed to demonstrate her judgement violates the Constitution or laws of the United States because "the Sixth Amendment right to counsel does

---

[3]     Since Goforth had not been indicted, if Mr. Logan represented Goforth's co-defendant prior to being retained by her, it could very well be that Mr. Logan did not realize at the time, that his client was actually a co-defendant of Goforth's.

[4]     Goforth claims Attorney Logan was representing her at the same time he was representing one of her co-defendants. A letter attached to Goforth's complaint reflects that AUSA Perry Piper wrote Attorney Logan on March 27, 2003, regarding the ground rules for the interview of his client, Goforth. In addition, the Court's electronic case filing system docket sheet reflects that on March 26, 2003, Attorney James F. Logan, Jr., appeared on behalf of William Curtis Jr.'s at his arraignment. William Curtis Jr. is one of Goforth's co-defendants.

not apply to pre-indictment negotiations." *United States v. Moody*, 206 F.3d 609, 612 (6th Cir.), *cert. denied*, 531 U.S. 925 (2000).

Although the Supreme Court has held that an accused has the right to effective assistance of counsel at the "critical stages" in the criminal justice process, *United States v. Wade*, 388 U.S. 218, 224 (1967), and "[t]hat right has been extended to certain pretrial proceedings that 'might appropriately be considered parts of the trial itself,' when the defendant is 'confronted, just as at trial, by the procedural system, or by his expert adversary, or by both[,]'" *United States v. Ash*, 413 U.S. 300, 310 (1973), both the Supreme Court and Sixth Circuit have interpreted these principles to mean that "critical stages" of criminal proceedings begin only after the initiation of formal judicial proceedings. *United States v. Moody*, 206 F.3d at 613.

The Supreme Court has consistently held that the right to appointment of counsel attaches only at or after the institution of adversary judicial proceedings. In *Kirby v. Illinois*, 406 U.S. 682 (1972), a plurality of the Supreme Court held that the Sixth Amendment right to counsel attaches only when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment, or preliminary hearing. The Supreme Court has confirmed, in subsequent cases, that the right to counsel does not attach until the initiation of adversary judicial proceedings. *See Moore v. Illinois*, 434 U.S. 220, 229 (1977) (The preliminary hearing marked the initiation of adversary judicial criminal proceedings against Moore, therefore, Moore's right to counsel had attached at the preliminary hearing at which the victim identified him); *Brewer v. Williams*, 430 U.S. 387, 389 (1977) ("Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him "whether by way of formal charge,

preliminary hearing, indictment, information, or arraignment....There can be no doubt in the present case that judicial proceedings had been initiated against Williams before the start of the automobile ride from Davenport to Des Moines. A warrant had been issued for his arrest, he had been arraigned on that warrant before a judge in a Davenport courtroom, and he had been committed by the court to confinement in jail."); and *United States v. Mandujano*, 425 U.S. 564, 581 (1976) (The defendant was a witness before a grand jury and the Supreme Court concluded "[n]o criminal proceedings had been instituted against respondent, hence the Sixth Amendment right to counsel had not come into play").

In the instant case, it appears that no formal judicial proceedings had been initiated against Goforth by way of indictment, information, arraignment, or preliminary hearing during the period of time she asserts a right to effective assistance of counsel as to Mr. Logan. An unindicted defendant who voluntarily speaks with government agents is an uncharged person without the right to effective assistance of counsel. *United States v. Latouf*, 132 F.3d 320, 330 (6th Cir. 1997), *cert. denied*, 523 U.S. 1101 (1998), *citing Moran v. Burbine*, 475 U.S. 412 (1986). Being bound by Sixth Circuit and Supreme Court precedent, the Court concludes Goforth had no right to effective assistance of counsel in her decision to speak with the government, thus, Mr. Logan's performance did not amount

to a constitutional violation. Accordingly, Goforth is not entitled to § 2255 relief on her claim that Attorney James Logan rendered ineffective assistance of counsel.

**2.      Attorney Philip L. Duval**

After participating in the interview session with the government, Goforth retained Attorney

Philip L. Duval.  Goforth argues Attorney Duval was ineffective based on the following:

Mr Duval basically told Petitioner that her innocence did not matter and that the government would convict her.  He said that if she went to trial, the government would produce a bunch of people she had never seen to testify that she had sold them drugs.  When she tried to get him to question the tape of Mike Davis supposedly ordering drugs from her, he told her that the other side of the conversation was inaudible but that the FBI had equipment and that if she went to trial her voice would be on it by the time it was played in court.  He did not [sic]discovery and made clear it [sic] felt sure she would be convicted if she went to trial, innocent or not.  In fact, he said that if she went to trial that the government would make such a strong case that she would get 25 years.

Petitioner believed that there was no hope for her.  She agreed to plead guilty to conspiracy but not to the gun charge.  She had no idea that the government was listing her as a major supplier or the length of sentence they were seeking.  However, her attorney advised her that Mr. Piper said that he would only accept a plea on both conspiracy and the gun charges.  Mr. [Duval] stated that Mr. Piper also said that if she did not enter that plea, he would indict her minor children, even though their only crime was living with Petitioner and her husband.  Petitioner also spoke with the attorney representing Chris Goforth.  That attorney told her the same thing: that Mr. Piper insisted he would indict her minor children if she did not execute a guilty plea.  That attorney also said that he did not know what she had said or done to Mr. Piper but that Mr. Piper was very determined to get her.  Petitioner also called three criminal attorneys in three other states and related her situation.  They all advised her that the government could go after the children and that even if they beat the charge, they could be held in jail for a long time without bond.  Mr. Duval had also stated that they (the U.S. Attorney's office) were angry with her because of what she had said at the interview.

Based on what her attorney had repeatedly told her about federal prosecutorial tactics, and Mr. Piper's insistence that she set someone, anyone, up, Petitioner was terrified for her children.  The other criminal attorneys all assured her that the federal government won almost every case and that they could charge her children on the assumption they knew about the drugs.  Petitioner fully believed that Mr. Piper would indict her children, innocent or not, and would use every means necessary to convict
them.  Putting her children first, Petitioner agreed to sign the Plea Agreement as long as Piper left her children alone.

When Mr. Duval presented it to her, he merely gave her the signature page to sign.  She never read it and it was not explained to her.  Under the threat to her children she

would have signed virtually anything.

(Court File No. 1). Goforth argues Attorney Duval was ineffective for, in effect, coercing her to plead guilty based on the above referenced conversations when she was actually innocent. Goforth claims that had counsel investigated her co-defendant's (Mike Davis), credibility before advising her to enter a guilty plea, her case might have been "significantly different." The Court will address each claim against Attorney Duval individually.

   a.   **Actual Innocence**

Goforth claims that she is not guilty of the undercover drug sale to Mike Davis on March 21, 2003, and that the gun Chris Goforth was carrying when he went to Davis' residence, was not in connection with a delivery of methamphetamine arranged by her on the telephone with Davis. Thus, she is making an actual innocence claim, a type of claim that could have been fully and completely addressed before this Court during a trial or on direct review. When a federal defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can first demonstrate either cause and actual prejudice, or that she is actually innocent. Goforth never raised an allegation of actual innocence while the case was before this Court, nor did she pursue a direct appeal and raise the claim. Goforth has offered no explanation for her default of her actual innocence claim. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). In addition, the Court observes that the "claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

Nevertheless, Goforth offers no facts to support her claim of actual innocence. The actual

innocence exception is very narrow in scope and requires proof of factual of innocence, not just legal insufficiency.  *See In re Lott*, 424 F.3d 446, 458 (6th Cir. 2005), 126 S.Ct. 1772 (2006).  To obtain any relief on the basis of an actual innocence claim, Goforth must present evidence of innocence so compelling that it undermines the Court's confidence in the criminal proceeding's outcome of conviction.  Thus, Goforth must show that she did not commit the crime as charged, not simply that some error in procedure occurred.

Goforth is unable to show that she did not commit the crime as charged because she in fact, acknowledged she was guilty of conspiracy to distribute methamphetamine and entered a guilty plea to the charge.  Absent clear and convincing evidence to the contrary, a defendant is bound by the representations she makes under oath during a plea colloquy.  *See Blackledge v. Allison*, 431 U.S. 63, 73-75 (1977)("[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.")  Goforth presents no credible evidence that suggests her representations of guilt during her plea were untruthful, and she is, therefore, bound by her sworn statements.

In addition, as noted by the government, Chris Goforth also admitted his involvement in the events that Goforth now asserts did not happen.  In addition, Goforth offers no explanation for how she is innocent but Mr. Goforth is guilty when they both agreed that a cooperating individual contacted Goforth to order methamphetamine and she told the individual that her husband, Chris Goforth, would deliver the methamphetamine, and in fact, both parties agreed during their plea

proceedings that Chris Goforth delivered approximately eight ounces of methamphetamine at that time.

Goforth is submitting a *free-standing* substantive actual innocence claim. There is a *free-standing* substantive actual innocence claim in a capital case which is based on actual innocence and which requires an extraordinarily high threshold showing. S*ee Herrara v. Collins*, 506 U.S. 390, 417 (1993). Goforth advances a *free-standing* claim of actual innocence, a claim the Supreme Court has never ruled is cognizable in a non-capital case. Nevertheless, assuming the claim is properly before the Court, Goforth has presented no evidence of her actual innocence; thus, falling far short of the required extraordinarily high threshold showing.

Goforth's claims as to her actual innocence are based on claims of counsel's failure to investigate her case sufficiently. Goforth's claims do not speak to her actual innocence of the crimes charged, and she offers no compelling evidence of her innocence. Goforth has failed to show or provide any evidence that she did not commit the crime as charged. In sum, Goforth has not raised a legitimate claim of actual innocence and there is nothing in the record to support such a claim. Indeed, the record–specifically, the agreed factual basis and the plea transcript–supports the exact opposite conclusion. Therefore, the Court finds that Goforth is not entitled to § 2255 relief on her actual innocence claim.

### b.      Coerced Guilty Plea

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citations omitted). Goforth challenges the voluntariness and intelligence of her plea on the grounds that counsel coerced her into entering a

guilty plea when he advised her the government threatened to indict her minor children[5] if she did not enter a guilty plea.[6] Goforth should have raised this claim before this Court or on direct review. Having done neither, she has waived her right to raise this issue in a § 2255 petition unless she is first able to demonstrate either cause and actual prejudice or that she is actually innocent. Goforth has failed to demonstrate either cause and actual prejudice or actual innocence.

Nevertheless, assuming *arguendo* that his claim is properly before the Court, her claim of a coerced plea is belied by the transcript of the plea hearing and sentencing hearing. At the plea hearing, the Court conducted a thorough colloquy which included asking Goforth a series of questions to insure her intelligent and voluntary waiver of various rights and entry of a guilty plea. One of those questions specifically asked if she was pressured or threatened or forced to plead guilty. Goforth denied being pressured, threatened, or forced to enter a guilty plea and after listening to the

facts supporting her plea of guilt, admitted under oath that she was in fact guilty (Court File No. 3, citing Transcript, at 19, 36).

Goforth alleges "[s]he was ...told that she must not admit during the sentencing hearing that she had been threatened or the Court would not accept the Plea Agreement. If that happened, Mr. Piper would go after her children. Petitioner denied being threatened in Court because of the same

---

[5]  The alleged drug transaction occurred on March 21, 2003. The PSR was prepared August 25, 2003, and at that time Goforth's children were 18 and 16 years of age.

[6]  Goforth's decision to enter a guilty plea was beneficial to her as she received a three-point reduction off her offense level. Additionally, it appears the government had the necessary proof to win a conviction had Goforth chosen to exercise her right to trial. Goforth's bald accusation that she was threatened with the prosecution of her children is not sufficient to warrant an evidentiary hearing. Goforth has failed to offer any credible evidence of coercion.

fears that led her to plead guilty." (Doc. 1). Goforth has made a conclusory accusation without providing any factual support. Goforth fails to identify the person who made the alleged threat and fails to identify the time the threat was made. Goforth has failed to provide any credible evidence that she was threatened into pleading guilty

The record reflects Goforth was thoroughly questioned during the entry of her guilty plea and answered in a fashion that left no questions as to her knowing and voluntary act to enter a guilty plea. The answers given by Goforth during the entry of her guilty plea are incompatible with her claim of coercion. Nothing in the record before the Court dispels the reliability of Goforth's testimony at her guilty plea hearing.

Goforth has failed to prove by a preponderance of the evidence that her guilty pleas were coerced and not knowing and voluntary. Moreover, the admissions Goforth made during her plea colloquy is compelling evidence that she voluntarily and knowingly entered his or her plea. Goforth has failed to demonstrate entitlement to federal post-conviction relief. Accordingly, the Court rejects Goforth's factually unsupported assertions that her guilty pleas were coerced and **DENIES** her § 2255 relief on this claim. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (declarations by plaintiff in open court "carry a strong presumption of verity").

### c. Counsel's Inadequate Investigation and Representation

Goforth claims counsel failed to advocate, in any meaningful manner, on her behalf. According to Goforth, counsel's strategy for representation was based on the presumption that being indicted was tantamount to guilt and he failed to explore the possibility of contesting her guilt. Goforth makes numerous claims of counsel's alleged failures without explaining how these alleged failures prejudiced her. The Court will address each claim individually.

16

### i. Failure to Discover Evidence

Goforth claims two Tennessee drug enforcement agents who were involved in the development and investigation of her case have executed letters for her to present to the President in support of her request for clemency. Presumably the letters, which Goforth has not filed with the Court, reflect the agents believe she is innocent. Goforth avers that, at a minimum, Attorney Duval should have discovered the information on which those agents base their conclusion that she is innocent.

Goforth asserts that counsel should have discovered the information upon which those agents based their conclusions but she has failed to provide a copy of the letters requesting clemency which she claims have been written on her behalf by the state drug enforcement agents who investigated her case. Goforth has failed to identify the agents who have written the letters; provide the Court with copies of the letters; or provide the information which she claims counsel should have discovered. Consequently, Goforth's bald assertion is insufficient to demonstrate counsel was ineffective and that she suffered prejudice as a result of counsel's failure to discover this alleged unidentified information. Accordingly, Goforth is **DENIED** § 2255 relief on her failure-to-discover-evidence claim.

### ii. Transcription of Taped Drug Deal

Goforth claims counsel was ineffective for failing to have her taped drug deal transcribed under Court order and control since he believed the government would tamper with the tape. Goforth seems to claim the tape would have demonstrated she did not agree to sell drugs. Goforth has failed to describe what evidence on the tape would have demonstrated she had not agreed to sell drugs or how the transcription of the tape under court order would have benefitted her. Thus, even

assuming counsel was deficient for failing to have the tape transcribed Goforth has failed to demonstrate she was prejudiced by counsel's alleged insufficient performance. Consequently, Goforth has failed to demonstrate a constitutional violation. Accordingly, Goforth is **DENIED** § 2255 relief on her claim that counsel failed to have the tape transcribed under court order and control.

### iii. Lie Detector Test

Goforth contends counsel was ineffective for failing to request that she be permitted to take a lie detector test to demonstrate her innocence. Goforth acknowledges that a lie detector test is not admissible but argues, without supplying any factual support, that it would have been persuasive with the United States Attorney's office. Assuming for the purpose of discussion, that counsel was deficient for failing to request that Goforth be permitted to take a lie detector test, she has failed to demonstrate any resulting prejudice as required by the second prong of the *Strickland v. Washington* test. Accordingly, no constitutional violation has been demonstrated by counsel's failure to request that Goforth be permitted to take a lie detector test and this claim will be **DENIED**.

### iv. Failure to Conduct Discovery of Mike Davis' Credibility

Goforth claims counsel failed to gather evidence through discovery to impeach the credibility of Mike Davis. Goforth claims Mike Davis, the witness who "set up" her and her husband, was later caught lying by AUSA Perry Piper, who threatened to revoke his 5K1 letter. Goforth contends that during the sentencing hearing, AUSA Piper stated Chris Goforth was the only person he believed was telling the truth. Goforth claims that since she was convicted solely on Davis' testimony, and AUSA Piper no longer believed Davis, counsel should have impeached Davis.

The problem with this argument is that Goforth did not proceed to trial, thus, counsel did not

18

have an opportunity to impeach Davis. Contrary to Goforth's argument that she was convicted solely on Davis' testimony, Goforth's conviction is based on her guilty plea and acknowledgment that she was in fact guilty; her husband's guilty plea and acknowledgment that he delivered drugs Goforth gave him; and their acknowledgment that the government's factual basis for the plea was true. Specifically, Goforth acknowledged the following facts as true:

> Mr. Davis, agreed to contact his source of supply, this is after Mr. Davis had been arrested, to order methamphetamine. His source of supply was Lavonda Goforth. Ms. Goforth lives in Georgia.

> Mr. Davis called Ms. Goforth and requested a pound of methamphetamine. She told him she could only provide one-half pound. Ms. Goforth informed Mr. Davis that she would send her husband to Cleveland, Tennessee to deliver the meth. Later that same day, Chris Goforth did arrive in Bradley County with another individual, Bruce Mantooth, who's also named in the indictment, and just for the record, the government's intention is to dismiss against Mr. Mantooth. But I just wanted to make that clear to Mr. Goforth. Chris Goforth delivered approximately eight ounces of methamphetamine to Mr. Davis. He was arrested at that time. At the time of the delivery he had on his person a loaded .22 caliber North American Arms revolver. Mr. Davis stated that he had received large quantities of methamphetamine from Mrs. Goforth in the past.

> With respect to Mrs. Goforth, Lavonda Goforth, and by the way, they, in fact, are married as well. The defendant agrees, this is Mrs. Goforth, with respect to Count 10 that the firearm carried by her husband was reasonably foreseeable to her and that the firearm was, in fact, possessed in furtherance of the drug trafficking crime to which she's pleading. Furthermore, the amount of methamphetamine distributed by Mrs. Goforth exceeded 500 grams.

(Doc. 3).

Counsel's failure to gather impeaching evidence against Davis does not offer Goforth any relief. Even if we assume counsel was deficient for failing to gather impeaching evidence against Davis, Goforth has not demonstrated how she was prejudiced. Goforth's claim that her "case might have been significantly different" had counsel explored Davis' credibility before advising her to enter a guilty plea is insufficiently pled because she failed to provide any factual support as required

by Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts. There is no proof before the Court as to what evidence could have been gathered and how it would have affected the taped drug transaction with which she was involved. In addition, Goforth has failed to demonstrate that but for counsel's failure to gather evidence to impeach Davis, she would have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). Accordingly, Goforth is not entitled to § 2255 relief on her failure-to-gather-impeaching-evidence claim.

### v. Counsel Failed to Cooperate with Bruce Mantooth and his attorney

Chris Goforth was accompanied by Bruce Mantooth when he (Chris) delivered methamphetamine to Davis. Bruce Mantooth was arrested and charged along with Chris Goforth. The government eventually dismissed the charges against Mantooth. Goforth complains that counsel failed to determine the reason for dropping the criminal charges against Mantooth and had he done so, he would have found evidence to support Goforth's claim that there was no drug deal.

Goforth has failed to present any evidence demonstrating the reason for dropping the charges against Mantooth was because there was no drug deal. Moreover, she has failed to identify any evidence an investigation would have revealed. Goforth has submitted nothing more than a factually unsupported allegation that an investigation would have revealed the drug deal to which she pleaded guilty actually did not occur. Consequently, she is unable to demonstrate counsel was deficient or that she suffered any prejudice. Accordingly, Goforth was not prejudiced by counsel's performance

and she is **DENIED** § 2255 relief on her claim that counsel failed to investigate the reason charges against Mantooth were dismissed.

### vi. Counsel's Failure to Fully Investigate

20

Goforth avers counsel failed to conduct a full investigation. Goforth contends Paris Gillette testified at her husband's bond hearing that during the two year investigation, he had never heard of Lavonda Goforth. Goforth maintains the development of that evidence could have raised reasonable doubt about her guilt when considered with other factors.

Goforth is simply incorrect. The fact that Paris Gillette had never heard of Lavonda Goforth does not demonstrate her innocence nor create reasonable doubt about her guilt. Assuming for the sake of discussion that counsel's performance was deficient for failing to conduct a full investigation and discover all of the investigative materials, there is no evidence that Goforth suffered any prejudice as a result of this alleged deficiency. Goforth has not produce any evidence to demonstrate a reasonable probability that the outcome would have been different. Accordingly, Goforth is not entitled to § 2255 relief on this claim.

### vii. Counsel's Failure to Challenge the Gun Charge

Goforth claims counsel was ineffective for failing to challenge her liability for the weapons count. Specifically, Goforth contends that her and her husband's testimony demonstrates the gun's presence was not reasonably foreseeable even if there was a conspiracy and the gun's "mere presence" was incidental and not associated with a drug crime in any way. This claim cannot be sustained.

When a petition is brought under § 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. *See United States v. DiCarlo*, 575 F.2d 952, 954 (lst Cir.), *cert. denied*, 439 U.S. 834 (1978). Although the Court must take Goforth's factual averments as true, it need not give weight to her conclusory allegations, self-interested characterizations, or allegations that are contradicted by the record. *See Mack v. United States*, 635 F.2d 20, 27 (1st Cir. 1980).

While Goforth's current assertion that her husband always left his guns behind when he went somewhere, implies she had no knowledge her husband possessed the weapon at the time he delivered the drugs Goforth does not aver that her co-defendant husband did not possess the weapon or that she did not know he possessed the weapon when he delivered the methamphetamine she gave him. The burden on the government was to prove it was reasonably foreseeable to Goforth that her husband would carry a gun when he delivered drugs for her. Since she admitted those facts during her guilty plea proceeding, counsel was not in a position to contest the charge and Goforth offers no details whatsoever as to the factual predicate for challenging her liability for her husband's possession of a gun while he was making a drug delivery for her.

Moreover, Goforth has failed to demonstrate that she was prejudiced by counsel's "failure to challenge the gun charge." Goforth's claim that her and her husband's testimony demonstrates the gun's presence was not reasonably foreseeable even if there was a conspiracy and the gun's "mere presence" was incidental and not associated with a drug crime in any way is untrue as neither Goforth nor her husband presented any testimony to the Court because they both entered guilty pleas. Moreover, Goforth is bound by her admission, during her guilty plea hearing, that the firearm carried by her husband was reasonably foreseeable to her and the firearm was, in fact, possessed in furtherance of the drug trafficking crime to which she pleaded guilty.

Accordingly, the Court rejects Goforth's claim that counsel was ineffective for failing to challenge the gun charge and **DENIES** § 2255 relief on this claim.

### viii.    Other claims of ineffective assistance of counsel

Goforth raises several miscellaneous ineffective assistance of counsel claims. Goforth's factually unsupported claims are not sufficient to state a claim for habeas relief. Although Rule 2(c)

of the Rules Governing Section 2254 Cases in the United States District Courts requires a habeas petitioner to "specify all the grounds for relief which are available" and "set forth facts to the claim asserted that is important." *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts (Advisory Committee Note to 1976 Amendment to Rule 2), Goforth has neither identified any facts which support her allegations of ineffective assistance of counsel or present any facts that demonstrate she was prejudiced by the alleged deficient performance on the part of her attorney, For this reason, her miscellaneous claims of ineffective assistance of counsel are insufficient to state a claim. Below the Court will explain why each claim will be **DISMISSED** for failing to set forth in summary form the facts supporting this claim. Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts.

First Goforth alleges counsel failed to challenge false grand jury testimony that $1200.00 was confiscated from her husband at the time of his arrest. Goforth also makes a general challenge to counsel's failure to obtain and review grand jury testimony.

The general rule is that grand jury proceedings are to be kept secret. In order to lift the veil of secrecy surrounding grand proceedings, a criminal defendant must demonstrate the existence of a particularized need for such discovery that outweighs the general rule of grand jury secrecy. *See Dennis v. United States*, 384 U.S. 855 (1966). Other than her bald assertion that some unidentified witness falsely testified her husband possessed $1200.00 when he was arrested, Goforth has not presented any evidence or facts to support this claim. Moreover, assuming for the sake of discussion that such alleged false testimony was presented to the grant jury, Goforth has not demonstrated how this alleged false testimony prejudiced her.

Goforth also raises a general claim that counsel failed to obtain and review the grand jury

testimony. This claim fails to state an ineffective assistance of counsel claim. Goforth, has not identified what evidence she expects to find or how it would have be beneficial to her. Thus, she has failed to meet her burden of proving she is entitled to § 2255 relief. Accordingly, the Court will **DISMISS** Goforth's claim based on false grand jury testimony and counsel's failure to obtain and review grand jury testimony for failing to set forth, in summary form, the facts supporting this claim. Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts.

Next, Goforth claims counsel failed to argue she was not part of a conspiracy. Goforth pleaded guilty to conspiracy; thus, counsel had no opportunity to argue she was not a part of the conspiracy. Goforth is bound by her admissions, which she made during her guilty plea proceeding, regarding her participation in the conspiracy. Goforth has failed to demonstrate counsel was deficient or that she suffered prejudice as a result of counsel's alleged failure to argue she was not part of the conspiracy. Thus, she is not entitled to § 2255 relief on this claim.

Goforth also claims "[c]ounsel failed to advocate with the U.S. Attorney's office for a lesser plea agreement." Goforth has produced no evidence that counsel failed to negotiate with the United States Attorney's office for a lesser plea agreement, that the Government would have offered a lesser plea agreement, or that she would have accepted a plea had one been offered. Because Goforth has failed to demonstrate the government was willing to accept or extend a lesser plea offer, she has failed to demonstrate that the government was willing to engage in plea negotiations. Thus, she cannot demonstrate prejudiced by counsel's failure to "advocate ...for a lesser plea agreement." Goforth has failed to submit any evidence showing she suffered prejudice. Thus, the claim is rejected.

Goforth complains that counsel failed to request a more impartial Assistant United States

Attorney ("AUSA") after she advised him that AUSA Piper was hostile towards her. Once again, Goforth has failed to demonstrate she suffered any prejudice as a result of counsel not requesting that a different AUSA prosecute her case. Goforth's factually unsupported claim is insufficient to state an ineffective assistance of counsel claim and will be **DENIED**.

Goforth's statement that "[c]ounsel apparently believed that the government could and would produce false evidence to secure a conviction but took no action through discovery to protect against such activities" fails to state a claim for ineffective assistance of counsel. Goforth has failed to satisfy either the deficient prong or the prejudice prong of the *Strickland v. Washington* test. Accordingly, this claim that counsel took no action through discovery to protect against the production of false evidence will be **DISMISSED**.

Goforth complains that counsel indicated she should take whatever plea agreement the government offered and that counsel failed to advise her that she could seek other opinions. This claim is without merit. Goforth asserts in her § 2255 petition that she sought and obtained opinions of other attorneys. Furthermore, assuming the alleged conduct on part of counsel was deficient performance, Goforth is not entitled to any § 2255 relief because she has failed to demonstrate any resulting prejudice. This claim of ineffective assistance of counsel will be **DISMISSED**.

### 3.    Prosecutorial Misconduct

Goforth makes two claims of prosecutorial misconduct. First she claims the prosecutor coerced her into entering a guilty plea when he threatened to send her children to jail. Second, Goforth contends that she provided significant assistance to the government despite the fact that her efforts did not lead to an arrest. Therefore, Goforth also challenges the prosecutor's refusal to file a § 5K1.1 motion on her behalf. The government asserts this claim is procedurally defaulted and

in the alternative it is frivolous.

Goforth did not raise her claim of prosecutorial misconduct during any proceedings before this Court, nor did she pursue a direct appeal and raise this claim. Under the doctrine of procedural default, a § 2255 movant who fails to raise a constitutional or jurisdictional issue on direct appeal waives the issue for purposes of collateral review unless he can demonstrate cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error, or that he is actually innocent of the crime for which he is convicted. *See United States v. Garcia-Mejia*, 2006 WL 2524091 (S.D.Tex. Aug. 31, 2006).

Goforth, who pleaded guilty in this case, alleges she is actually innocent, but fails to provide any factual support to demonstrate her innocence. As the Court concluded above, Goforth has failed to carry her burden of demonstrating she is actually innocent. Therefore, absent proof of cause and prejudice or actual innocence, this claim is not properly before the Court.

Nevertheless, assuming *arguendo* that these prosecutorial misconduct claims are properly before the Court, Goforth is not entitled to § 2255 relief. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor,' *Smith v. Phillips*, 455 U.S. 209, 219 (1982), and ...'the appropriate standard of review for ... a claim [of prosecutorial misconduct] on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.' *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)." *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006).

### a.    Coercion

As support for her claim that the prosecutor coerced her into entering a guilty plea when he threatened to send her children to jail, Goforth asserts she consulted with three other attorneys who

affirmed that her children could be prosecuted merely because they lived in the same house. The government contends this claim is frivolous because the charged offenses were readily provable based upon the cooperating witnesses and the corroborating evidence. Moreover, the government maintains it does not and did not have any reason to threaten petitioner to plead guilty, and it does not indict children for their parents' drug offenses.

The burden is on Goforth to prove her claim by a preponderance of the evidence. *Goldsby v. United States*, 152 Fed.Appx. 431, 435 (6th Cir. Oct. 12, 2005) (unpublished table decision), *available in* 2005 WL 2572362. Goforth has failed to submit any credible proof that the prosecutor coerced her into pleading guilty. Goforth does not provided any factual support for her allegation. She does not explain when she was threatened, who was present when she was threatened, nor has she submitted an affidavit from trial counsel supporting this claim. Consequently, Goforth's bare allegation that the government threatened to prosecute her children is insufficient to warrant an evidentiary hearing. Accordingly, Goforth is not entitled to any § 2255 relief on her prosecutorial misconduct claim.

### b. Denial of § 5K.1 Motion

Goforth contends she cooperated with the federal agents after entering her guilty plea. Goforth claims she wore a tape to a meeting with someone who allegedly put a contract out on her but she did not disclose any names or other information about the conspiracy to which she pleaded

guilty because, as an innocent person, she had no information. The government contends Goforth failed to render any assistance.

Goforth has not presented any evidence to support a § 5K1.1 departure. The government's

27

decision not to move for a downward departure appears to be fair and made in good faith. While Goforth claims she wore a wire to a meeting, she does not claim she assisted the prosecutors with regard to any other person or prosecution. Although Goforth did cooperate to a degree, she did not provide substantial assistance. *See United States v. Nelson-Rodriguez*, 319 F.3d 12, 53 (1st Cir. 2003) ("[S]ubstantial assistance is a higher standard for a defendant to meet that mere cooperation.") Based on Goforth's own admissions and the record before the Court, there is no evidence that Goforth provided substantial assistance. Thus, Goforth's claims demonstrate her actions did not warrant a departure or sentence reduction. Accordingly, no evidentiary hearing is required on this claim.

## VI.     Conclusion

Goforth is not entitled to any relief under 28 U.S.C. § 2255. A separate judgment will enter **DENYING** Goforth's § 2255 motion [Court File No. 1].

ENTER this the 7th day of November, 2006.

_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE